# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

### Civil Action No. 9:17-cv-81370-DMM

ANDREW HODGES, an individual;
VLADIMIR COOD, an individual;
GAUTAM DESAI, an individual;
JODY POWELL, an individual;
JEFFREY HEBERLING, an individual;
SHAMMI NABUKUMAR, an individual; and
ANTHONY SAJEWICZ, an individual;

       Plaintiffs,

v.

MONKEY CAPITAL, LLC, a Delaware limited liability company;
MONKEY CAPITAL, INC., a foreign corporation;
and DANIEL HARRISON, an individual;

       Defendants.

_____/

## AMENDED COMPLAINT

Plaintiffs ANDREW HODGES, an individual; VLADIMIR COOD, an individual; GAUTAM DESAI, an individual; JODY POWELL, an individual; JEFFREY HEBERLING, an individual; SHAMMI NABUKUMAR, an individual; and ANTHONY SAJEWICZ, an individual ("Plaintiffs"); by and through undersigned counsel, hereby sue MONKEY CAPITAL, LLC, a Delaware limited liability company; MONKEY CAPITAL, INC., a foreign corporation (collectively referred to herein as "MONKEY CAPITAL"); and DANIEL HARRISON, an individual ("HARRISON") (MONKEY CAPITAL and HARRISON collectively referred to as "Defendants"), for damages and for equitable relief.  In support thereof, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.    This action is brought by Plaintiffs ANDREW HODGES, VLADIMIR COOD, GAUTAM DESAI, JODY POWELL, JEFFREY HEBERLING, SHAMMI NABUKUMAR, and ANTHONY SAJEWICZ, who contributed millions of dollars' worth of cryptocurrency in advance

of a scheduled July 2017 Initial Coin Offering (ICO) propagated by Defendants.  Plaintiffs alone were

responsible for the following investments:

| NAME | CRYPTOCURRENCY INVESTED | CURRENT VALUATION OF ASSETS INVESTED (in USD) [APPROX.] |
|---|---|---|
| Andrew Hodges | 50.003 bitcoin | $550,000.00 |
| Vladimir Cood | 30 bitcoin | $330,000.00 |
| Gautam Desai | 9.64 bitcoin 109,101.99 Waves coins 5,105.67 MobileGo coins | $875,000.00 |
| Jody Powell | 8.2 bitcoin | $90,000.00 |
| Jeffrey Heberling | 3.745 bitcoin | $41,000.00 |
| Shammi NabuKumar | 10 bitcoin | $110,000.00 |
| Anthony Sajewicz | 26 bitcoin | $286,000.00 |
| | TOTAL | $2,282,000.00 |

2.      Defendants spent months promoting interest in their purported development of a

unified network of news and data distribution with respect to virtual capital assets, as well as a private

cryptocurrency exchange and decentralized hedge fund (the "Monkey Capital Market"), which was

not fully developed or functional at the time Plaintiffs each made their investments.

3.      For each investment in MONKEY CAPITAL prior to the ICO and the launch of the

Monkey Capital Market, the investor would be given cryptocurrency options called a Coeval ("COE")

which were newly-created by Defendants and which the investor, upon the ICO taking place, could

exchange for a to-be-created cryptocurrency called Monkey Coin ("MNY") that Defendants

purported would skyrocket in demand and value once the Monkey Capital Market was launched.

4.      Coeval and Monkey Coins allegedly derive their value from the usefulness and

popularity of the Monkey Capital Market -- development and launch of which was entirely in

Defendants' control.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

5.      Defendants postponed the original ICO commencement date from July 15, 2017 -- instead delaying it until August 8, 2017 and stating that the ICO period would remain open until September 8, 2017 -- ostensibly to allow certain "major institutional partners" more time to align their investment interests, though it appears the delay was simply a ruse to stimulate additional interest and "FOMO" (fear of missing out) amongst investors who were told by Defendants that MONKEY CAPITAL had intentionally reduced its supply of Coeval down to "just 65,000 in circulation."

6.      August 8, 2017 came and went without the ICO commencing.  Instead, at or about that time, MONKEY CAPITAL's fundraising website disappeared.

7.      Moreover, as of the date of this filing, the Monkey Capital Market is purportedly still being developed and, upon information and belief, might never be launched.  In other words, there never was, and may never be, a Monkey Capital Market.

8.      The MONKEY CAPITAL investors invested in a common enterprise and with an expectation that the increased value of their Coeval and to-be-issued Monkey Coins would produce a substantial return on their investment that would be derived solely from the efforts of others -- namely, Defendants.

9.      In short, the thing for which Plaintiffs invested their valuable assets looks like a security, functions like a security, and fits the definition of a security.  Securities regulators look beyond the form or label someone appends to his/her/its activity and instead consider the actual substance and purpose of the activity.

10.     Notwithstanding Defendants' attempts to avoid governmental and private scrutiny, it is clear that the financiers were indeed profit-seeking investors in a security and that Defendants promoted and conducted an unregistered offering of securities.

11.     Defendants have already pocketed for themselves large sums of money for their promotional efforts, and -- due to the many misrepresentations, factual omissions, and unlawful

activities engaged in by Defendants -- it appears Plaintiffs will not, and potentially cannot, see any return on their investments.

12.     In describing ICOs as a "fertile ground for fraud on investors," United States Securities and Exchange Commission (SEC) Chairman Jay Clayton recently said: "[I]nvestors often do not appreciate that ICO insiders and management have access to immediate liquidity, as do larger investors, who may purchase tokens at favorable prices.  Trading of tokens on these platforms is susceptible to price manipulation and other fraudulent trading practices."[1]  Mr. Clayton went on to state: "The SEC may not yet have policy or rulemaking answers in these areas, but we are on the lookout for ways to fight the type of opacity that can create an environment conducive to misconduct."

13.     Proof of Defendants' deceptive activity and intentional deprivation of investors' rights and protections under the federal securities laws is not required or determinative as to Plaintiffs' claims.  That is because Defendants are strictly liable for offering and selling unregistered securities.  Nevertheless, Defendants' deceptive advertisements, blogs, and media appearances are outlined below to stress the urgency and need for immediate judicial intervention to preserve Plaintiffs' and other investors' significant financial interests which Defendants currently control, and to rectify existing and future irreparable harm to Plaintiffs and other investors.

14.     Plaintiffs seek compensatory and equitable relief rescinding their investments in MONKEY CAPITAL and restoring to them the assets and funds they were fraudulently induced into investing.

---

[1] Jay Clayton, *Governance and Transparency at the Commission and in Our Markets*, Remarks at the PLI 49th Annual Institute on Securities Regulation - New York, NY (November 8, 2017), https://www.sec.gov/news/speech/speech-clayton-2017-11-08.

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

## GENERAL ALLEGATIONS

### THE PARTIES

#### Plaintiffs

15.     Plaintiff ANDREW HODGES ("HODGES") is an individual domiciled in Boynton Beach, Florida and is *sui juris*. Between July 14, 2017 and July 19, 2017, Plaintiff HODGES logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 50.003 bitcoin as his investment in MONKEY CAPITAL. Plaintiff HODGES' bitcoin (now being held by Defendants) are currently worth approximately $550,000.00.

16.     Plaintiff VLADIMIR COOD ("COOD") is an individual domiciled in San Francisco, California and is *sui juris*. Between mid-July 2017 and September 2017, Plaintiff COOD logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 30 bitcoin as his investment in MONKEY CAPITAL. Plaintiff COOD's bitcoin (now being held by Defendants) are currently worth approximately $330,000.00.

17.     Plaintiff GAUTAM DESAI ("DESAI") is an individual domiciled in Danville, California and is *sui juris*. Between early-July 2017 and mid-August 2017, Plaintiff DESAI logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 9.64 bitcoin, 109,101.99 Waves coins, and 5,105.67 MobileGo coins as his investment in MONKEY CAPITAL. Plaintiff DESAI's bitcoin, Waves coins, and MobileGo coins (now being held by Defendants) are currently worth approximately $875,000.00.

18.     Plaintiff JODY POWELL ("POWELL") is an individual domiciled in Henrico, Virginia and is *sui juris*. Between July 9, 2017 and July 14, 2017, Plaintiff POWELL logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 8.2 bitcoin as his investment in MONKEY CAPITAL. Plaintiff POWELL's bitcoin (now being held by Defendants) are currently worth approximately $90,000.00.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

19.     Plaintiff JEFFREY HEBERLING ("HEBERLING") is an individual who, at all times material hereto, was domiciled in Broomall, Pennsylvania.  Between July 23, 2017 and September 21, 2017, Plaintiff HEBERLING logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 3.745 bitcoin as his investment in MONKEY CAPITAL.  Plaintiff HEBERLING's bitcoin (now being held by Defendants) are currently worth approximately $41,000.00.

20.     Plaintiff SHAMMI NABUKUMAR ("NABUKUMAR") is an individual domiciled in Omaha, Nebraska and is *sui juris*.  Between August 30, 2017 and October 20, 2017, Plaintiff NABUKUMAR logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 10 bitcoin as his investment in MONKEY CAPITAL.  Plaintiff NABUKUMAR's bitcoin (now being held by Defendants) are currently worth approximately $110,000.00.

21.     Plaintiff ANTHONY SAJEWICZ ("SAJEWICZ") is an individual domiciled in Greenbrae, California and is *sui juris*.  Between July 1, 2017 and November 30, 2017, Plaintiff SAJEWICZ logged onto to the Waves DEX (defined below) and followed the instructions provided to transmit to Defendants 26 bitcoin as his investment in MONKEY CAPITAL.  Plaintiff SAJEWICZ's bitcoin (now being held by Defendants) are currently worth approximately $286,000.00.

## Defendants

22.     Defendant MONKEY CAPITAL, LLC, is a Delaware limited liability company which lists its principal place of business in Delaware.  Upon information and belief, MONKEY CAPITAL, LLC is currently controlled by its founder, DANIEL HARRISON, who created the entity in or about late-July 2017 as a "new parent company to hold [all] interest in the [investment] entity."

23.     Defendant MONKEY CAPITAL, INC. is a foreign for-profit corporation which lists its principal place of business in Singapore.  Upon information and belief, MONKEY CAPITAL, INC. is currently controlled by its founder, DANIEL HARRISON.

24.     Defendant DANIEL HARRISION, according to his online profile, is an individual domiciled in Singapore and is *sui juris.*

25.     Upon information and belief, MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. are wholly owned, operated, and entirely dominated by DANIEL HARRISION, who continues to operate the businesses through the present day while ignoring all corporate formalities and using both companies interchangeably as mere instrumentalities for his personal interests in an attempt to shield himself from personal liability for his wrongful conduct.  The companies do not exist separate or apart from DANIEL HARRISION and are merely pass-through entities from which DANIEL HARRISION takes all profits.  Moreover, it is believed that DANIEL HARRISON formed the MONKEY CAPITAL entities for fraudulent purposes as a tool to undertake the investment scheme and unregistered sale of securities he enacted upon all MONKEY CAPITAL investors, including Plaintiffs.

**Other Liable Persons/Entities**

26.     In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but respecting whom Plaintiffs currently lack specific facts to permit them to name such person or persons as a party defendant.  By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should the facts warrant adding such parties.

**JURISDICTION AND VENUE**

**Subject Matter Jurisdiction**

27.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## Personal Jurisdiction

28.     This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

29.     Defendants solicited investors in this jurisdiction, including Plaintiff ANDREW HODGES, to participate in the promoted-but-never-happened MONKEY CAPITAL ICO -- reaping from those investors large sums of money and other assets, including valuable cryptocurrency.

30.     In light of the foregoing, Defendants purposefully availed themselves of the benefits of operating in this jurisdiction; and this Court may exercise personal jurisdiction over Defendants.

## Venue

31.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, as several of the MONKEY CAPITAL investors reside in Florida.

32.     In light of the foregoing, this District is a proper venue in which to adjudicate this dispute.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### Promises . . . Promises . . . Promises

33.     According to a website created and managed by MONKEY CAPITAL[2], DANIEL HARRISON -- in or around December 2014 -- developed the concepts underlying the Monkey Capital Market, which he later expressed through publications including a MONKEY CAPITAL White Paper in July 2017.

34.     As MONKEY CAPITAL promoted to investors, MONKEY CAPITAL's promise was to develop the Monkey Capital Market: a unique, inter-connected network of cryptocurrency news

---

[2] https://corporate.m0nk3y.com

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

and information; a platform on which cryptocurrency could be exchanged for other cryptocurrency or fiat currency (without prioritizing its own proprietary cryptocurrency); and communication channels through which users could widely disseminate information relevant to them and their investments in the cryptocurrency world.

35.     Moreover, MONKEY CAPITAL promoted that through its "all-star management team" -- Chief Executive Officer DANIEL HARRISON, Chief Operating Officer Joshua Hawley, and Group Financial Director Stefan Hickmott -- it would be operating a decentralized hedge fund to invest in items such as SpaceX supply contracts and hostile public company takeovers and Blockchain systems while simultaneously speculating on large blocks of cryptocurrency.  As represented by MONKEY CAPITAL, the management team's "diverse backgrounds and experience in the funding and acquisition industry bolsters the Company's ability to select seed and early stage businesses with the greatest likelihood of potential success for the Company to invest."

36.     To invest in MONKEY CAPITAL "at a valuation premium" before the ICO and get in on the ground floor of the Monkey Capital Market before it launched, investors were solicited to transfer cryptocurrency (*e.g.*, bitcoin or Ether) to MONKEY CAPITAL, in exchange for which the investors would be given cryptocurrency options created by Defendants called Coeval, which were made available to the investors on a cryptocurrency trading platform called the Waves Decentralized Exchange (the "Waves DEX").

37.     Defendants represented to investors that each Coeval token entitled the holder to 10,000 Monkey Coins when the MONKEY CAPITAL ICO were to take place.

38.     As represented by Defendants, the Coeval held great intrinsic value and investors were wise to invest before the ICO because the value of Coeval and the value of the to-be-issued Monkey Coins would rise exponentially once the Monkey Capital Market gets launched.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

### The Fake News, as Presented by Daniel Harrison

39.     Defendants' promotional statements were not limited to their own published website and White Paper.  Defendants utilized media outlets and online chatrooms to disseminate self-aggrandizing stories touting the anticipated success of the MONKEY CAPITAL project.

40.     For example, Defendants retained a marketing strategist named Azeem Khan to increase investor interest by contributing to *HuffPost News* a flattering article touting the virtues of the MONKEY CAPITAL effort and its management team.  Among the falsely glowing statements in the article was the following:

> *Like any big event, Monkey Capital's ICO seems to be showing us in some way how finance can be both engaging and highly entertaining.  And if predictions are anything to go by, incredibly profitable too: chat rooms already have the offering pegged to raise a billion dollars or more, becoming the first ever 10-digit sum raised in a crowdfunding campaign.*[3]

41.     Likewise, Defendants paid for an article published on *CryptoCoinNews* a few days later that used the *HuffPost News* marketing piece as a bootstrap and further added to MONKEY CAPITAL's self-created hype by describing MONKEY CAPITAL's confusingly-stated goals as an investment vehicle thusly: "While that may sound on the ambiguous side, a closer examination of the projects that Monkey Capital lists in its White Paper as potential investments certainly seem like really high-quality investments."[4]

---

[3] Azeem Khan, *Bitcoin's Billion Dollar Baboon: An Initial Coin Offering (ICO) Attracts Big Time Talent*, HuffPost News (July 4, 2017), https://www.huffingtonpost.com/entry/bitcoins-billion-dollar-baboon-an-initial-coin-offering_us_595bc961e4b0f078efd98cb3.

[4] *British Money Printing Heir Turns to Printing Digital Money in ICO with Blockchain Developer and US VC*, CryptoCoinNews (July 7, 2017), https://www.ccn.com/harrisonsons-vc-ico/ (referencing in the article to the marketing information published a few days earlier in *HuffPost News*; and conceding that the entire article is a "Sponsored Story" supposedly written by a journalist named "Tom Clancy" who, with tongue planted firmly in cheek, just happens to share his name with the famous novelist known for his great works of fiction).

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

42.     Defendants also turned to the radio airwaves to spread their false message of greatness. In an interview with Goldseek Radio's nationally-syndicated radio host Chris Waltzek, DANIEL HARRISON left Mr. Waltzek dazzled and amazed with his sales pitch.  "If I had to give Monkey Capital a rating, I give it 6 out of 5 stars," Waltzek said.  "I haven't seen a product like this in 12 or more years; it's something from the future."[5]

43.     When Defendants felt additional promotion was needed that the media was not providing, DANIEL HARRISON turned to a Slack channel dedicated to discussions about MONKEY CAPITAL on which he took matters into his own hands:



|  | **dmhco**  2017-07-02 13:54:24 |
|---|---|
| | Thanks we are also stoked - I think what's so cool here is above all things because we are all relatively wealthy, successful entrepreneurs in our own right who have come together to kinda form this coalition which does the ICO, that the focus is constantly one of: is what we are doing really a value-add for the buyer of the token? Are we adding value to the ICO process, and in turn, are we giving the ICO buyer a better product as a result of doing this? Or is it just something that is more convenient for us? There's this constant back-and-forth between the executives of the management team and the advisors (who have massive credentials in and of themselves) and this is really leading to significant product enhancement. So far for instance, as a result of this kind of internal devil's advocacy. we have managed to push the timeline so barely more than a month after the guys buy the tokens, we are buying 10% of them up off the market even as we undertake the second stage capital infusion. This will have huge repercussions in a positive way for the token holders. |

44.     For many investors, it became increasingly difficult to separate the truth from the fiction; and the hype created by Defendants sang to them like a siren's song.

---

[5] Egor Pavlovich, *Monkey Evolves ICO Markets for Potential Bitcoin, Ethereum-Style Gains*, Coinspeaker (July 7, 2017), https://www.coinspeaker.com/2017/07/07/monkey-evolves-ico-markets-potential-bitcoin-ethereum-style-gains/.

**Investors *Did* Believe the Hype**

45.     Notwithstanding the lack of an actual Monkey Capital Market or any clear vision of how the market would exist and function, the interest hyped up by Defendants succeeded; as the vast majority of investments occurred before the scheduled ICO.

46.     In July 2017 and early-August 2017, many Coeval began being released to investors through the Waves DEX.  Because the Monkey Capital Market had not yet been launched and the ICO had not yet commenced, the pre-utility Coeval held nothing more than a *de minimis* value.

47.     As anticipation for the upcoming scheduled ICO grew, Defendants -- on or about August 3, 2017, without any forewarning to investors -- released to DANIEL HARRISON and MONKEY COIN insiders one billion (1,000,000,000) Monkey Coins.

48.     Upon information and belief, 800,000,000 of the Monkey Coins were issued to DANIEL HARRISON, who quickly converted them into other cryptocurrency and fiat currency -- a combination presently believed to be valued at approximately $30,000,000.00.

**Monkey Capital Pulls A Disappearing Act**

49.     As August 8, 2017 approached, investors were eager to see their investments come to fruition and see the Monkey Capital Market in which they had invested get launched at or about the time of the ICO.

50.     Surprisingly, August 8, 2017 came and went; and MONKEY CAPITAL did not conduct its ICO.

51.     At or about that time, MONKEY CAPITAL's fundraising website disappeared.

52.     Upon information and belief, the secure address on the Waves DEX to which investors sent their investment assets was not a MONKEY CAPITAL wallet from which investors would be allocated their appropriate number of Coeval or Monkey Coins; rather, the wallet was a wallet owned and controlled by DANIEL HARRISON personally.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

53.     Upon further information and belief, after the DANIEL HARRISON wallet on the Waves DEX was well-funded with investor assets, Defendants sold nearly all of their Coeval for more established cryptocurrency (like bitcoin or Ether) or fiat currency -- causing a precipitous drop in the price of Coeval to below $100 per token.

54.     Additionally, Defendants did not -- and, upon information and belief, will not -- issue to investors any Monkey Coins.

55.     As a result of Defendants' misrepresentations and manipulation of investors, investors in MONKEY CAPITAL now have Coeval that Defendants have entirely devalued and which have no marketability.

### Where Have You Gone ~~Joe DiMaggio~~ Daniel Harrison?

56.     Following the non-happening of the MONKEY CAPITAL ICO, Defendants have provided no substantive updates to investors and have been predominantly silent in the face of investors' many questions and concerns.

57.     At Defendants' suggestion and request, many MONKEY CAPITAL investors since September 2017 -- including Plaintiffs -- have swapped their Coeval tokens for another cryptocurrency called ERC20, which Defendants have not yet released to the investors.

58.     Instead, Defendants are threatening to forcibly remove tokens from investors if the investors do not purchase "insurance" from Defendants.

59.     In essence, Defendants have converted the cryptocurrency Plaintiffs have deposited with Defendants as investment funds, Defendants have taken for themselves the value of those investments and have entirely devalued the self-created cryptocurrency they provided Plaintiffs in exchange, and Defendants are now manipulating the very market they created by seeking to extort further assets from Plaintiffs.

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

60.     As noted above, SEC Chairman Jay Clayton warns that fundraising efforts in exchange for tokens issued for start-up or open-source projects are ripe for misconduct -- especially because "insiders and management have access to immediate liquidity, as do larger investors."

### Pre-Network Launch Tokens Are Securities

61.     By their very nature, tokens sold before a network launch are securities, because investors purchasing those tokens are relying on the technical and managerial efforts of others to affect the failure or success of the enterprise.

62.     While pre-network launch tokens may someday have a consumptive use, the fact that they have no pre-launch utility renders them almost entirely dependent upon the efforts of the issuer to successfully develop and launch a functional network.

63.     Here, Plaintiffs were (and still are) entirely dependent upon Defendants to launch the Monkey Capital Market and provide some valuable use to the Coeval and the to-be-issued Monkey Coins for which Plaintiffs have already provided their investment funds.

### No Safe Harbor

64.     The statutory safe-harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Amended Complaint.

65.     Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.

66.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

67.     Alternatively, to the extent the statutory safe-harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false or that the forward-looking statement was authorized or approved by an executive officer of MONKEY CAPITAL, who knew those statements were false when made.

68.     As a result of the foregoing, Plaintiffs have been damaged in an amount that will be proven at trial.

69.     Plaintiffs have duly performed all of their duties and obligations, and any conditions precedent to Plaintiffs bringing this action have occurred, have been performed, or else have been excused or waived.

70.     To enforce their rights, Plaintiffs have retained undersigned counsel and are obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

## COUNT I – VIOLATION OF SECTION 12 OF THE SECURITIES ACT
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 70 above, and further allege:

71.     Section 12(a)(1) [15 U.S.C. §§ 77*l*(a)(1)] grants Plaintiffs a private right of action against any person who offers or sells a security in violation of Section 5 [15 U.S.C. §§ 77e], and states that such person:

> shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

72.     Defendants, by engaging in the conduct described above, directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

mails to offer to sell or to actually sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

73.     Defendants are "sellers" within the meaning of the Securities Act because they or their agents solicited Plaintiffs' investments in the MONKEY CAPITAL ICO.

74.     The terms of the MONKEY CAPITAL ICO called for an investment of cryptocurrency or fiat currency by Plaintiffs.

75.     The funds paid by Plaintiffs pursuant to the MONKEY CAPITAL ICO were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors.  As a result, the investors, including Plaintiffs, shared in the risks and benefits of the investment.

76.     Plaintiffs relied on, and are dependent upon, the expertise and efforts of Defendants for their investment returns.

77.     Plaintiffs expected that they would receive profits from their investments in Defendants' efforts.

78.     Coeval and Monkey Coins constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.

79.     No registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged herein.

80.     By reason of the foregoing, Defendants have participated in the offer and sale of unregistered securities in violation of the Securities Act.

81.     As a direct and proximate result of Defendants' unregistered sale of securities, Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the MONKEY CAPITAL ICO, and Defendants are liable to Plaintiffs for rescission and/or compensatory damages.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT II – VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT
### [AGAINST DEFENDANT DANIEL HARRISON]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-70 above, and further allege:

82.     Defendant DANIEL HARRISON is subject to liability by virtue of his top-level executive position with MONKEY CAPITAL and his undeniable influence over the enterprise, which provided him the power to control or influence MONKEY CAPITAL's actions.   For example, DANIEL HARRISON is an executive of MONKEY CAPITAL, is one of its only shareholders, and is responsible for much of the company's day-to-day operations, including its operations vis-à-vis Plaintiffs.   As a top-level executive and controlling person of MONKEY CAPITAL, DANIEL HARRISON knew of, or recklessly disregarded, the alleged misrepresentations made by MONKEY CAPITAL in connection with the ICO.

83.     By virtue of his position as a top-level executive and participation in and/or awareness of MONKEY CAPITAL's operations, Defendant DANIEL HARRISON had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to MONKEY CAPITAL's solicitation of funds from investors, including the decision to engage in the sale of unregistered securities in furtherance thereof.

84.     Accordingly, Defendant DANIEL HARRISON is a "controlling person" of MONKEY CAPITAL within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

85.     Plaintiffs have suffered damages as a result of Defendant DANIEL HARRISON's violation of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

## COUNT III – RESCISSION OF CONTRACT
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-70 above, and further allege:

86.     The terms of the MONKEY CAPITAL ICO constitute a contract between: (1) Plaintiffs and (2) Defendants.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

87.     The contract was entered into by and between Defendants and each Plaintiff between July 1, 2017 and October 31, 2017.

88.     The terms of the MONKEY CAPITAL ICO called for an investment of cryptocurrency by Plaintiffs.

89.     The funds paid by Plaintiffs pursuant to the MONKEY CAPITAL ICO were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors.  As a result, the investors, including Plaintiffs, shared in the risks and benefits of the investment.

90.     Plaintiffs relied on, and are dependent upon, the expertise and efforts of Defendants for their investment returns.

91.     The terms of the MONKEY CAPITAL ICO constitute an investment contract and is therefore subject to federal and state securities laws, including the registration requirements promulgated thereunder.

92.     No registration statement was filed or in effect with any federal or state regulatory body, and no exemption from registration exists with respect to the MONKEY CAPITAL ICO.

93.     As a result of Defendants' fraud, false representations, and violation of federal and state securities laws in connection with the MONKEY CAPITAL ICO, Plaintiffs state their demand that the Contract be rescinded and canceled.

94.     To the extent that Plaintiffs have received from Defendants any benefits through the contract -- though none are known to them at this time -- Plaintiffs hereby offers to restore to Defendants those benefits, once they are identified and can be quantified.

95.     As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged.

96.     Defendant MONKEY CAPITAL, LLC is subject to liability because it solicited and otherwise participated in the sale to Plaintiffs of the misrepresented and unregistered securities

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

identified herein.  Moreover, Defendant MONKEY CAPITAL, LLC is subject to liability because it is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs which must be disgorged and returned to Plaintiffs in effectuating the rescission of the contract into which they were unlawfully led.

97.     Defendant MONKEY CAPITAL, INC. is subject to liability because it solicited and otherwise participated in the sale to Plaintiffs of the misrepresented and unregistered securities identified herein.  Moreover, Defendant MONKEY CAPITAL, INC. is subject to liability because it is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs which must be disgorged and returned to Plaintiffs in effectuating the rescission of the contract into which they were unlawfully led.

98.     Defendant DANIEL HARRISON is subject to liability because he solicited and otherwise participated in the sale to Plaintiffs of the misrepresented and unregistered securities identified herein.  Moreover, Defendant DANIEL HARRISON is subject to liability because he is believed to control, or have obtained control over, a large portion of the assets invested by Plaintiffs which must be disgorged and returned to Plaintiffs in effectuating the rescission of the contract into which they were unlawfully led.

## COUNT IV – ALTER EGO LIABILITY
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 70 above, and further allege:

99.     Upon information and belief, at all times material hereto, each of the Defendants were principal, agent, affiliate, manager, alter-ego, co-venturer, partner, surety, guarantor, officer, director, or employee of the remaining Defendants and were at all times acting within the scope of such agency, affiliation, management, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

knowledge of all of the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiffs' rights and the damages to Plaintiffs proximately caused thereby.

100.     Upon information and belief, there exists, and at all times material hereto existed, a unity of interest and ownership between and among Defendants, such that any individuality and/or separateness between them has ceased to exist.

101.     Upon information and belief, MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. were mere shells, instrumentalities, and conduits through which Defendants carried on their business for DANIEL HARRISON's primary, if not sole, benefit.  MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. were and are controlled, dominated, and operated by DANIEL HARRISON as his individual businesses and alter egos.

102.     Upon information and belief, Defendants have intermingled their assets and obtained assets from other Defendants to suit their convenience and to evade U.S. regulations, liability to defrauded investors in the MONKEY CAPITAL ICO, payment of taxes, and other legitimate obligations.

103.     Upon information and belief, Defendants have used their own assets, and those of other Defendants, for personal use and obtained funds from other Defendants' business accounts for their own personal use.

104.     Under the facts and circumstances present herein, adhering to the fiction of separate entities would sanction a fraud and/or promote injustice, because Plaintiffs, as victims of Defendants' wrongdoing, would suffer injury.

105.     In light of the foregoing, Plaintiffs are entitled to a judgment against Defendants jointly and severally, in a sum according to proof at trial, plus interest at the maximum rate allowed by law and reimbursement of costs.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT V – UNREGISTERED OFFER AND SALE OF SECURITIES
## IN VIOLATION OF FLA. STAT. §§ 517.011, *et seq.*
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-70 above, and further allege:

106.    The MONKEY CAPITAL ICO called for an investment of money or assets by Plaintiffs -- specifically, the bitcoin, Ether, and other assets of value transferred to Defendants in exchange for the non-functional Coeval and Monkey Coins issued by Defendants.

107.    The funds paid by Plaintiffs were pooled by Defendants in the project in an effort by Defendants to secure a profit for themselves and Plaintiffs.  As a result, Plaintiffs -- as the investors -- shared in the risks and benefits of the investment scheme.

108.    Plaintiffs relied upon, and were dependent upon, the expertise and efforts of Defendants for their investment returns.

109.    Plaintiffs expected that they would receive profits from their investments in Defendants' efforts.

110.    Coeval and Monkey Coins constitute investment contracts and are therefore subject to the Florida Blue Sky Laws, including the registration requirements of Fla. Stat. § 517.07.

111.    No registration statements have been filed with the Florida Office of Financial Regulation or have been in effect with respect to any of the offerings alleged herein.

112.    Similarly, no exemption from registration exists with respect to the MONKEY CAPITAL ICO.

113.    By reason of the foregoing, Defendants have violated Fla. Stat. §§ 517.07, *et seq.*

114.    Defendant DANIEL HARRISON is subject to liability under Fla. Stat. §§ 517.07 and 517.211 because he solicited and otherwise personally participated and aided the sale to Plaintiffs of the MONKEY CAPITAL-issued cryptocurrency at issue herein.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

115.     As a direct and proximate result of Defendants' unregistered sale of securities, Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the MONKEY CAPITAL ICO.

**COUNT VI – VIOLATION OF FLORIDA'S
DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,
CHAPTER 501, § 211(1), FLA. STAT. ("FDUTPA")**
[AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 70 above, and further allege:

116.     Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiffs in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

117.     Plaintiffs are "consumers" within the meaning of Fla. Stat. § 501.203(7).

118.     By soliciting investor funds in the manner in which they did, Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

119.     While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms.  The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

120.     The federal courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

121.     Moreover, as the securities laws are designed for consumer protection and "proscribe[ ] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

122. Defendants' acts and omissions of representing to Plaintiffs that, among other things:

    (a) MONKEY CAPITAL was developing a news, information, and trading network -- along with a decentralized hedge fund -- in which investors could place their funds for profit;

    (b) Plaintiffs' cryptocurrency was being used to build out the Monkey Capital Network;

    (c) The Monkey Capital Network would be fully functional shortly after the ICO;

    (d) MONKEY CAPITAL would timely issue to investors their proportional Monkey Coin holdings shortly after the ICO

constitute both deceptive and unfair trade practices because the false representations and omissions made by Defendants have a tendency or capacity to deceive consumers, such as Plaintiffs, into investing in MONKEY CAPITAL's falsely-touted business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

123. As a result of Defendants' deceptive trade practices, Plaintiffs were deceived into investing their cryptocurrency and/or fiat currency with a company that functioned solely as an engine of fraud -- thus causing significant economic damage to Plaintiffs.

124. The materially false statements and omissions as described above, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiffs which would have likely deceived a reasonable person under the circumstances.

125. Defendants were on notice at all relevant times that the false representations of material facts described above were being communicated to prospective investors (such as Plaintiffs) by their authorized agents.

126. As a result of the false representations and violations of the securities laws described above, Plaintiffs have been damaged by, among other things losing their invested cryptocurrency.

127. Plaintiffs have also been damaged in other and further ways subject to proof at trial.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

128.    Therefore, Defendants engaged in unfair and deceptive trade practices in violation of Section 501.201 *et seq*., Fla. Stat..

129.    Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiffs are entitled to recover from Defendants the reasonable amount of attorneys' fees Plaintiffs have had to incur in representing their interests in this matter.

## COUNT VII – FRAUDULENT INDUCEMENT
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 70 above, and further allege:

130.    DANIEL HARRISON -- on behalf of himself and MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. -- by acts of both omission and commission, made false statements to Plaintiffs concerning material facts about their investments in MONKEY CAPITAL.

131.    Specifically, Defendants' representations to Plaintiffs that, among other things:

(a)  MONKEY CAPITAL was developing a news, information, and trading network -- along with a decentralized hedge fund -- in which investors could place their funds for profit;

(b)  Plaintiffs' cryptocurrency was being used to build out the Monkey Capital Network;

(c)  The Monkey Capital Network would be fully functional shortly after the ICO;

(d)  MONKEY CAPITAL would timely issue to investors their proportional Monkey Coin holdings shortly after the ICO.

were false; and Defendants knew at the time the statements were made that the statements were false.

132.    Defendants intended that Plaintiffs would be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

133.    In the course of investing their money with Defendants and entrusting Defendants to develop the Monkey Capital Network and timely issue to them their proportional Monkey Coin

holdings, Plaintiffs reasonably and justifiably relied on the statements of fact made to them by and on behalf of Defendants.

134.    As a direct and proximate result of Plaintiffs' reliance on the statements made to them by Defendants, Plaintiffs have suffered damage.

## COUNT VIII – CONVERSION
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1-70 above, and further allege:

135.    Plaintiffs transferred to Defendants valuable cryptocurrency for investment.

136.    Defendants have kept Plaintiffs' cryptocurrency (including all profits and all "forked"/newly-created cryptocurrency related thereto) after Plaintiffs requested its return, despite Defendants' lack of any ownership interest in the money.

137.    By refusing to return to Plaintiffs their cryptocurrency (including all profits and all "forked"/newly-created cryptocurrency to which Plaintiffs are entitled), Defendants intended to interfere with, and indeed have interfered with, Plaintiffs' ownership and interest in the cryptocurrency and have deprived Plaintiffs of their property, permanently or temporarily.

138.    Upon information and belief, Defendants have utilized Plaintiffs' cryptocurrency to, *inter alia*, cover Defendants' own business expenses and allow DANIEL HARRISON to enrich himself and companies he owned or controlled.

139.    As a result of Defendants' conversion of Plaintiffs' cryptocurrency to their own corporate and personal use, Plaintiffs have suffered damage.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Civil Action No. 9:17-cv-81370-DMM
Amended Complaint

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ANDREW HODGES, an individual; VLADIMIR COOD, an individual; GAUTAM DESAI, an individual; JODY POWELL, an individual; JEFFREY HEBERLING, an individual; SHAMMI NABUKUMAR, an individual; and ANTHONY SAJEWICZ, an individual, respectfully pray for relief as follows:

(a) An Order enjoining Defendants from making further transfers or dissipations of the investment funds and assets raised in connection with the promoted MONKEY CAPITAL ICO, or using such funds and assets in any further purchases or transactions;

(b) A judgment awarding Plaintiffs equitable restitution, including, without limitation, rescission of their investments in MONKEY CAPTIAL, restoration of the *status quo ante*, and return to Plaintiffs all cryptocurrency or fiat currency they paid to Defendants in connection with the purported ICO as a result of Defendants' unlawful and unfair business practices and conduct;

(c) An award of any and all additional damages recoverable under law -- jointly and severally entered against Defendants -- including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

(d) An Order requiring an accounting of the remaining funds and assets raised from Plaintiffs in connection with the MONKEY CAPITAL ICO;

(e) An Order imposing a constructive trust over the funds and assets rightfully belonging to Plaintiffs;

(f) Pre- and post-judgment interest;

(g) Attorneys' fees, expenses, and the costs of this action; and

(h) All other and further relief as this Court deems necessary, just, and proper.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Civil Action No. 9:17-cv-81370-DMM
Amended Complaint

Respectfully submitted,

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:      (954) 516-6000

By: _____
      DAVID C. SILVER
      Florida Bar No. 572764
      E-mail: DSilver@SilverMillerLaw.com
      JASON S. MILLER
      Florida Bar No. 072206
      E-mail: JMiller@SilverMillerLaw.com

      *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this __7th__ day of March 2018 by using the CM/ECF system and that a true and correct copy will be served *via* electronic mail to: **MONKEY CAPITAL, LLC** c/o Daniel Harrison, E-mail: dmh1980@protonmail.com; **MONKEY CAPITAL, INC.** c/o Daniel Harrison, E-mail: dmh1980@protonmail.com; and **DANIEL HARRISON**, E-mail: dmh1980@protonmail.com.

_____
      DAVID C. SILVER