# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

**Civil Action No. 9:17-cv-81370-DMM**

ANDREW HODGES, an individual;
VLADIMIR COOD, an individual;
GAUTAM DESAI, an individual;
JODY POWELL, an individual;
JEFFREY HEBERLING, an individual;
SHAMMI NABUKUMAR, an individual; and
ANTHONY SAJEWICZ, an individual;
      Plaintiffs,

v.

MONKEY CAPITAL, LLC, a Delaware limited liability company;
MONKEY CAPITAL, INC., a foreign corporation;
and DANIEL HARRISON, an individual;
      Defendants.
_____/

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AGAINST DEFENDANT DANIEL HARRISON

---

    Respectfully submitted,

    DAVID C. SILVER
    Florida Bar No. 572764
    E-mail: DSilver@SilverMillerLaw.com
    JASON S. MILLER
    Florida Bar No. 072206
    E-mail: JMiller@SilverMillerLaw.com
    **SILVER MILLER**
    11780 W. Sample Road
    Coral Springs, Florida 33065
    Telephone:    (954) 516-6000

    *Counsel for Plaintiffs*

## I. INTRODUCTION

On August 14, 2018, this Court entered a Final Default Judgment against Defendants MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC.[1], which was later subsumed within an August 27, 2018 Final Judgment Awarding Damages.[2] Although establishing as fact in the Final Default Judgment that Defendant DANIEL HARRISON, an individual ("Defendant HARRISON"), acted both in his individual capacity and as the person through whom the corporate defendants committed their wrongful acts[3], the Court declined to enter a final judgment against Defendant HARRISON.

In light of the findings of fact included within the Final Default Judgment as well as additional undisputed facts in the record, Plaintiffs ANDREW HODGES, VLADIMIR COOD, GAUTAM DESAI, JODY POWELL, SHAMMI NABUKUMAR, and ANTHONY SAJEWICZ ("Plaintiffs"); by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby move this Honorable Court for entry of summary judgment in their favor and against Defendant HARRISON on the claims asserted by Plaintiffs in their Amended Complaint[4] herein. As grounds therefor, Plaintiffs state the following:

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs incorporate herein by reference the Statement of Undisputed Material Facts ("SOUMF") they have filed contemporaneously herewith, pursuant to Local Rule 56.1(a). Several of those material facts are specifically cited below.

Capitalized terms are used as they are defined in the Amended Complaint or in the SOUMF.

---

[1] Docket Entry No. ("DE") 44 (the "Final Default Judgment").

[2] DE 50 (the "Damages Award").

[3] *See*, *e.g.*, DE 44 at 17 ("Daniel Harrison -- on behalf of himself and the Monkey Capital Defendants -- by acts of both omission and commission, made false statements to Plaintiffs concerning material facts about their investments in Monkey Capital.").

[4] DE 28.

- 2 -

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

### III. STANDARD OF REVIEW

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[5] The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.[6] The Court should not grant summary judgment unless it is clear that a trial is unnecessary[7], and any doubts in this regard should be resolved against the moving party.[8]

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[9] To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.[10]

After the movant has met its burden under Rule 56(a), the burden of production shifts; and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[11] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[12]

---

[5] Fed.R.Civ.P. 56(a).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[8] *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157 (1970).

[9] *Celotex Corp.*, 477 U.S. at 323.

[10] *Id.* at 325.

[11] *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[12] Fed.R.Civ.P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.[13]  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."[14]  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."[15]

### IV.   LEGAL ARGUMENT
#### Count I -- Violation of Section 12(a) of the Securities Act of 1933

Section 12(a)(1) [15 U.S.C. §§ 77*l*(a)(1)] grants Plaintiffs a private right of action against any person who offers or sells a security in violation of Section 5 [15 U.S.C. §§ 77e], and states that such person:

> shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

To prevail on a Section 5 claim, a plaintiff must establish the following elements: "(1) absence of an effective registration statement covering the securities in question; (2) the offer or sale of the securities; and (3) the use of the mails, or any means or instruments of transportation or communication in interstate commerce in connection with the sale or offer."[16]

---

[13] *Anderson*, 477 U.S. at 257.

[14] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[15] *Anderson*, 477 U.S. 242, 249-50.

[16] *Scheck Invs., L.P. v. Kensington Mgmt., Inc.*, 2009 WL 10668565, *4 (S.D. Fla. June 17, 2009) (citing *SEC v. Unique Fin. Concepts, Inc.*, 119 F.Supp.2d 1332, 1339 (S.D. Fla. 1998).

The definition of a "security" under the Securities Act includes "investment contract(s)." "An offering is an investment contract if there is: (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to come solely from the efforts of others."[17]

Defendant HARRISON, by engaging in the conduct described above, directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or to actually sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.[18] Defendant HARRISON is a "seller" within the meaning of the Securities Act because he solicited Plaintiffs' investments in the aborted MONKEY CAPITAL ICO.[19] Moreover, no registration statements have been filed with the SEC or have been in effect with respect to any of the offerings alleged in the Amended Complaint.[20]

### a. Investment of Money

It is well-established that the "investment of money" required for an "investment contract" need not be made in cash and refers more generally to "an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses."[21] The terms of the MONKEY CAPITAL ICO called for an investment of cryptocurrency

---

[17] *Tippens v. Round Island Plantation LLC*, 2009 WL 2365347, at *9 (S.D. Fla. July 31, 2009) (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). *See also*, *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) ("*Howey*").

[18] *See, e.g.*, *SEC v. Levin*, 2013 WL 594736, at *12 (S.D. Fla. Feb. 14, 2013) ("[T]he internet, which necessarily includes email, is an 'instrumentality of interstate commerce.'") (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)). *See also*, SOUMF at ¶¶ 1-8, 10-16, 52-54.

[19] *See*, SOUMF at ¶¶ 10-16.

[20] *See*, DE 44 at 12 ("Coeval and Monkey Coins constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.") and SOUMF at ¶¶ 36-51 (establishing lack of any registration or exemption therefrom).

[21] *SEC v. Friendly*, 49 F.Supp.2d 1363, 1368-69 (S.D. Fla. 1999); *see also*, *Uselton v. Comm. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991).

- 5 -

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

or fiat currency by Plaintiffs.[22] "Plaintiffs' investment of assets, in the form of Ether and/or Bitcoin, satisfies the 'investment of money' prong for an investment contract."[23]

### b.  Common Enterprise

"[A] common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties."[24] "The thrust of the common enterprise element test is that the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return."[25]

The funds paid by Plaintiffs pursuant to the MONKEY CAPITAL ICO were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors.[26] As a result, the investors, including Plaintiffs, shared in the risks and benefits of the investment.

### c.  Expectation of Profits from the Efforts of Others

Plaintiffs relied on, and are dependent upon, Defendant HARRISON's expertise and efforts for their investment returns.[27] Moreover, Plaintiffs expected that they would receive profits from their investments in Defendants' efforts -- which Defendant HARRISON himself has conceded.[28] "Herein, the fortunes of individual investors in the [MONKEY CAPITAL] ICO were directly tied to the failure or success of the products the Defendants purported to develop. An individual

---

[22] *See*, SOUMF at ¶¶ 17, 21, 24, 27, 30, and 33.

[23] *Rensel v. Centra Tech, Inc.*, U.S. District Court - Southern District of Florida, Case No. 1:17-cv-24500-KING/Simonton (June 25, 2018) ("*Rensel*") at *10.

[24] *SEC v. Unique*, 196 F.3d at 1199 (citing *Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F.2d 1121, 1124 (11th Cir. 1990)).

[25] *Eberhardt v. Waters*, 901 F.2d 1578, 1580-81 (11th Cir. 1990).

[26] *See*, SOUMF at ¶¶ 18, 22, 25, 28, 31, and 34.

[27] *See*, SOUMF at ¶¶ 1-8, 20.

[28] *See*, SOUMF at ¶¶ 19, 23, 26, 29, 32, and 35.

- 6 -

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

investor could exert no control over the success or failure of his or her investment. Thus, Plaintiffs have established the existence of a common enterprise."[29]

Finally, the third prong of the *Howey* test is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."[30] "Although *Howey* stated that the expectation of profits must 'come solely from the efforts of others,' 'many courts, including the Eleventh Circuit, have rejected a literal or strict interpretation and have instead interpreted 'solely' to mean substantially or primarily.' The Supreme Court has removed the emphasis from the word 'solely' and held that 'the touchstone' of the test is 'an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.'"[31]

"Because the success of [MONKEY CAPITAL] and the [Monkey Capital Market] that [Defendant HARRISON] purported to develop was entirely dependent on his efforts and actions, the third prong is satisfied."[32]

As a direct and proximate result of Defendants' unregistered sale of securities[33], Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the MONKEY CAPITAL ICO; and Defendant HARRISON is liable to Plaintiffs for rescission and compensatory damages.

---

[29] *Rensel* at *10.

[30] *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011) (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (11th Cir. 1981)); *see also*, *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755 (11th Cir. 2007) ("the focus is on the dependence of the investor on the entrepreneurial or managerial skills of a promoter or other party") (quoting *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982)).

[31] *Tippens*, 2009 WL 2365347, at *9 n. 9 (citations omitted).

[32] *Rensel* at *10.

[33] *See*, DE 44 at 12 ("Coeval and Monkey Coins constitute investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder.").

**Count II -- Violation of Section 15(a) of the Securities Act of 1933**

"Section 15[(a) of the Securities Act] imposes derivative liability on certain 'control persons' for primary violations of the Securities Act."[34]

Defendant HARRISON is subject to liability by virtue of his top-level executive position with MONKEY CAPITAL and his undeniable influence over the enterprise, which provided him the power to control or influence MONKEY CAPITAL's actions.[35] As a top-level executive and controlling person of MONKEY CAPITAL, Defendant HARRISON knew of, or recklessly disregarded, the misrepresentations made by MONKEY CAPITAL in connection with the ICO. By virtue of his position as a top-level executive and participation in and/or awareness of MONKEY CAPITAL's operations, Defendant HARRISON had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to MONKEY CAPITAL's solicitation of funds from investors, including the decision to engage in the sale of unregistered securities in furtherance thereof. Moreover, Defendant HARRISON successfully solicited Plaintiffs' purchases of the securities at issue herein -- motivated by a desire to serve his own financial interest.[36]

Accordingly, Defendant HARRISON is a "controlling person" of MONKEY CAPITAL within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o. Plaintiffs have suffered damages as a result of Defendant HARRISON's violation of Section 15(a) of the Securities Act, 15 U.S.C. § 77o.

---

[34] *Greenfield Children's P'ship v. Friendfinder Networks, Inc.*, 2014 WL 12205997, at *6 (S.D. Fla. Mar. 18, 2014).

[35] *See*, SOUMF at ¶¶ 1-9.

[36] *See*, SOUMF at ¶¶ 10-15.

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

## Count III -- Rescission of Contract

"In order to state a claim for rescission, Plaintiffs must plead facts demonstrating the following: (1) the parties' relationship or character; (2) the making of a contract; (3) fraud, mistake, false representations, impossibility of performance, or other grounds for rescission; (4) that the party seeking rescission actually rescinded the contract and notified the other party accordingly; (5) if the moving party received benefits from the contract, Plaintiffs must allege that they attempted to restore those benefits to the party furnishing them; and (6) there is no adequate remedy at law for the moving party."[37]

As held by the Court in its Final Default Judgment[38]:

> The terms of the scheduled MONKEY CAPITAL ICO constitute a contract between: (1) Plaintiffs and (2) Defendants. The contract was entered into by and between Defendants and each Plaintiff between July 1, 2017 and October 31, 2017. The terms of the scheduled MONKEY CAPITAL ICO called for an investment of cryptocurrency by Plaintiffs. The funds paid by Plaintiffs pursuant to the scheduled MONKEY CAPITAL ICO were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors. As a result, the investors, including Plaintiffs, shared in the risks and benefits of the investment. Plaintiffs relied on, and are dependent upon, the expertise and efforts of Defendants for their investment returns. The terms of the scheduled MONKEY CAPITAL ICO constitute an investment contract and are therefore subject to federal and state securities laws, including the registration requirements promulgated thereunder. No registration statement was filed or in effect with any federal or state regulatory body, and no exemption from registration exists with respect to the MONKEY CAPITAL ICO. As a result of Defendants' fraud, false representations, and violation of federal and state securities laws in connection with the MONKEY CAPITAL ICO, the Contract should be rescinded and canceled.
>
> Upon filing the instant lawsuit, Plaintiffs rescinded the contract and notified Defendants accordingly. To the extent that Plaintiffs received from Defendants any benefits through the contract --

---

[37] *Beaver v. Inkmart LLC*, 2012 WL 3822264, *5 (S.D. Fla. Sept. 4, 2012) (Middlebrooks, J).

[38] *See*, DE 44 at 12-13.

though none are known to them at this time -- Plaintiffs offered to restore to Defendants those benefits when the Complaint in this matter was filed. As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged.

Along with the corporate defendants, Defendant HARRISON is also subject to Plaintiffs' demand for rescission because he solicited and otherwise participated in the sale to Plaintiffs of the misrepresented and unregistered securities identified herein.[39] Moreover, Defendant HARRISON is subject to rescission because he controlled, and obtained control over, a large portion of the assets invested by Plaintiffs which must be disgorged and returned to Plaintiffs in effectuating the rescission of the contract into which they were unlawfully led.[40]

### Count IV -- Alter Ego Liability

There exists, and at all times material hereto existed, a unity of interest and ownership between and among Defendant HARRISON and the corporate entities such that any individuality and/or separateness between them has ceased to exist. MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. were mere shells, instrumentalities, and conduits through which Defendants carried on their business for Defendant HARRISON's primary, if not sole, benefit.[41] MONKEY CAPITAL, LLC and MONKEY CAPITAL, INC. were and are controlled, dominated, and operated by Defendant HARRISON as his individual businesses and alter egos.[42]

Additionally, Defendant HARRISON and the corporate entities have intermingled their assets such that adhering to the fiction of separate entities would sanction a fraud and/or promote

---

[39] *See*, SOUMF at ¶¶ 10-15.

[40] *See*, SOUMF at ¶¶ 3-8 and 9 ("The address on the Waves DEX to which Monkey Capital investors sent their investment assets was a wallet Defendant HARRISON owned.").

[41] *See*, SOUMF at ¶¶ 1-9.

[42] *Id.*

injustice, because Plaintiffs, as victims of Defendant HARRISON and the corporate entities' joint wrongdoing, would suffer injury.[43]

### Count V -- Unregistered Offer and Sale of Securities in Violation of Fla. Stat. §§ 517.011, *et seq.*

"Section 517.07 of the [Florida Securities and Investor Protection Act] provides that '[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security . . . is registered pursuant to this chapter.'  Fla. Stat. § 517.07(1). Accordingly, in order for Plaintiffs to prevail on [this] Count . . . of the Amended Complaint, they must establish that: (1) [the] contracts sold by [Defendant HARRISON] were securities; (2) these securities were not registered with the State of Florida; and (3) Defendant HARRISON sold such unregistered securities."[44]

The scheduled MONKEY CAPITAL ICO called for an investment of money or assets by Plaintiffs -- specifically, the bitcoin, Ether, and other assets of value transferred to Defendants in exchange for the non-functional Coeval and Monkey Coins issued by Defendants.[45]  The funds paid by Plaintiffs were pooled by Defendant HARRISON in the project in an effort by Defendant HARRISON to secure a profit for himself and Plaintiffs.[46]  As a result, Plaintiffs -- as the investors -- shared in the risks and benefits of the investment scheme.[47]  Plaintiffs relied upon, and were dependent upon, Defendant HARRISON's expertise and efforts for their investment returns.[48]

---

[43] *See*, SOUMF at ¶ 9.

[44] *Scheck Invs., L.P.*, 2009 WL 10668565, *2.

[45] *See*, DE 44 at 14.

[46] *Id.  See also*, SOUMF at ¶¶ 18, 22, 25, 28, 31, and 34.

[47] *See*, DE 44 at 14.

[48] *Id.  See also*, SOUMF at ¶¶ 1-8, 20.

Plaintiffs expected that they would receive profits from their investments in Defendants' efforts -- which Defendant HARRISON himself has conceded.[49]

Coeval and Monkey Coins constitute investment contracts and are therefore subject to the Florida Blue Sky Laws, including the registration requirements of Fla. Stat. § 517.07.[50]  No registration statements have been filed with the Florida Office of Financial Regulation or have been in effect with respect to any of the offerings alleged herein, nor did any exemption from registration exists with respect to the MONKEY CAPITAL ICO.[51]  Despite neither registering the offerings or obtaining an exemption from registration, Defendant HARRISON sold Plaintiffs the Coeval and Monkey Coins in connection with the MONKEY CAPITAL ICO.[52]  By reason of the foregoing, Defendant HARRISON has violated Fla. Stat. §§ 517.07, *et seq.*; and as a direct and proximate result of Defendant HARRISON's unregistered sale of securities, Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the MONKEY CAPITAL ICO.

### Count VI -- Violation of Florida's Deceptive and Unfair Trade Practices Act, Chapter 501, § 211(1) Fla. Stat. ("FDUTPA")

A cause of action arising under FDUPTA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[53]  Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiffs in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

---

[49] *See*, SOUMF at ¶¶ 19, 23, 26, 29, 32, and 35.

[50] *See*, DE 44 at 14.

[51] *Id.  See also*, SOUMF at ¶¶ 36-51.

[52] *See*, SOUMF at ¶¶ 10-15.

[53] *Beaver*, 2012 WL 3822264, at *4.  *See also*, *Tippens*, 2009 WL 2365347, at *11 (same).

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

Plaintiffs are "consumers" within the meaning of Fla. Stat. § 501.203(7). By soliciting investor funds in the manner in which he did[54], Defendant HARRISON engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8). While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."[55] The federal courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers[56] and have defined an "unfair trade practice" as any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[57]

Acting for himself and for the corporate entities, Defendant HARRISON's acts and omissions of representing to Plaintiffs that, among other things: (a) MONKEY CAPITAL was developing a news, information, and trading network -- along with a decentralized hedge fund -- in which investors could place their funds for profit; (b) Plaintiffs' cryptocurrency was being used to build out the Monkey Capital Network; (c) The Monkey Capital Network would be fully functional shortly after the ICO; and (d) MONKEY CAPITAL would timely issue to investors their proportional Monkey Coin holdings shortly after the ICO constitute both deceptive and unfair trade practices because the false representations and omissions made by Defendant HARRISON have a tendency or capacity to deceive consumers, such as Plaintiffs, into investing in MONKEY

---

[54] *See*, SOUMF at ¶¶ 10-15.

[55] *Lombardo v. Johnson & Johnson Consumer Comps., Inc.*, 124 F.Supp.3d 1283, 1287 (S.D. Fla. 2015).

[56] *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F.Supp.3d 1356, 1367 (S.D. Fla. 2016).

[57] *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F.Supp.2d 1305, 1312 (S.D. Fla. 2010).

CAPITAL's falsely-touted business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[58]

As a result of Defendant HARRISON's deceptive trade practices, Plaintiffs were deceived into investing their cryptocurrency and/or fiat currency with a company that functioned solely as an engine of fraud -- thus causing significant economic damage to Plaintiffs.  The materially false statements and omissions as described above, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiffs which would have likely deceived a reasonable person under the circumstances.  As a result of the false representations and violations of the securities laws described above, Plaintiffs have been damaged by, among other things losing their invested cryptocurrency.

## Count VII -- Fraudulent Inducement

Under Florida law, the elements of fraudulent inducement are: (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation.[59]

Here, **the Court has already concluded** that Defendant HARRISON -- on behalf of himself and the corporate entities -- by acts of both omission and commission, made false statements to Plaintiffs concerning material facts about their investments in MONKEY CAPITAL.[60]  Specifically, the representations to Plaintiffs that, among other things: (a) MONKEY CAPITAL was developing a news, information, and trading network -- along with a decentralized hedge fund -- in which investors could place their funds for profit; (b) Plaintiffs' cryptocurrency was

---

[58] *See*, DE 44 at 16.

[59] *Levenger Co. v. Feldman*, 516 F.Supp.2d 1272, 1290 (S.D. Fla. 2007) (Middlebrooks, J).

[60] *See*, DE 44 at 17.

being used to build out the Monkey Capital Network; (c) The Monkey Capital Network would be fully functional shortly after the ICO; and (d) MONKEY CAPITAL would timely issue to investors their proportional Monkey Coin holdings shortly after the ICO were false; and Defendant HARRISON knew at the time the statements were made that the statements were false.[61]

Defendant HARRISON intended that Plaintiffs be induced into action by relying upon the statements of fact he made to them.[62] By investing their money with Defendants and entrusting Defendant HARRISON to develop the Monkey Capital Network and timely issue to them their Monkey Coin holdings, Plaintiffs reasonably and justifiably relied on the statements of fact made to them by Defendant HARRISON.[63] As a direct and proximate result of Plaintiffs' reliance on the statements made to them by Defendant HARRISON, Plaintiffs have suffered damage.

### Count VIII -- Conversion

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."[64] Under Florida law, the claimant must further establish "possession or an immediate right to possession of the converted property at the time of conversion."[65] While demand by the rightful owner serves as actual notice of the rights of the bereaved party to the recipient, demand and refusal are not required elements for a conversion claim. "The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made[, and] it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown."[66]

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985).

[65] *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005).

[66] *IberiaBank v. Coconut 41, LLC*, 984 F.Supp.2d 1283, 1308 (M.D. Fla. 2013).

Plaintiffs transferred to Defendant HARRISON valuable cryptocurrency for investment.[67] Defendant HARRISON has kept Plaintiffs' cryptocurrency (including all profits and all "forked"/newly-created cryptocurrency related thereto) after Plaintiffs requested its return, despite Defendant HARRISON's lack of any ownership interest in the money.[68] By refusing to return to Plaintiffs their cryptocurrency (including all profits and all "forked"/newly-created cryptocurrency to which Plaintiffs are entitled), Defendant HARRISON intended to interfere with, and indeed have interfered with, Plaintiffs' ownership in, interest in, and right to possess the cryptocurrency and have permanently deprived Plaintiffs of their property.[69] Defendant HARRISON has utilized Plaintiffs' cryptocurrency to, *inter alia*, cover Defendant HARRISON's own business expenses and allow Defendant HARRISON to enrich himself and companies he owned or controlled.[70] As a result of Defendant HARRISON's conversion of Plaintiffs' cryptocurrency to his own corporate and personal use, Plaintiffs have suffered damage.

## Damages

Damages may be awarded "if the record adequately reflects the basis for the award via hearing or a demonstration of detailed affidavits establishing the necessary facts."[71] Here, the Court

---

[67] *See*, SOUMF at ¶¶ 17, 21, 24, 27, 30, 33, and 9 ("The address on the Waves DEX to which Monkey Capital investors sent their investment assets was a wallet Defendant HARRISON owned.").

[68] *See*, DE 44 at 18.

[69] *Id.*

[70] *Id.*

[71] *PetMed Express, Inc. v. MedPetsCom, Inc.*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (entering Final Default Judgment and finding a hearing was unnecessary to determine damages where plaintiff had attached detailed declarations with accompanying documentary evidence to its Motion for Final Default Judgment). *See also*, *CFTC v. Gutterman*, 2012 WL 2413082, at *4 (S.D. Fla. June 26, 2012) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."), citing *Pope v. U.S.*, 323 U.S. 1, 12 (1944).

already established in the Damages Award that Plaintiffs have incurred damages in the following principal amounts:

| Name of Plaintiff | Cryptocurrency Wrongfully Taken from Plaintiff | Value of Cryptocurrency Wrongfully Taken from Plaintiff ($USD) |
|---|---|---|
| Andrew Hodges | 50.003 bitcoin | $313,613.00 |
| Vladimir Cood | 30 bitcoin | $188,157.00 |
| Gautam Desai | 9.64 bitcoin<br>109,101.99 Waves coins<br>5,105.67 MobileGo coins | $60,461.02<br>$289,241.00<br>$933.78<br>Total: $ 350,635.80 |
| Jody Powell | 8.2 bitcoin | $52,429.50 |
| Shammi Nabukumar | 10 bitcoin | $62,718.90 |
| Anthony Sajewicz | 27.6 bitcoin<br>48 Ether<br>3,000 Waves coins | $173,104.00<br>$21,101.42<br>$7,953.33<br>Total: $202,158.75 |
| **TOTAL PRINCIPAL SUM** | | **$ 1,169,712.95** |

In addition, Defendant HARRISON -- just like the corporate entities he operates -- should be liable to Plaintiffs for pre-judgment (at the interest rate set forth in Fla. Stat. § 55.03) from July 13, 2017 until the date of the Court's entry of judgment against him and post-judgment interest (at the statutory rate prescribed by 28 U.S.C. § 1961) on the above-cited damage total.

Moreover, entry of a judgment is appropriate if the defendant's liability is well-pled in the complaint and the defendant has failed to participate in the litigation in good faith.[72]  Here, Defendant HARRISON has done just that.[73]

---

[72] *Eagle Hosp. Physicians v. SRG Consulting*, 561 F.3d 1298, 1307 (11th Cir. 2009); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

[73] *See*, *e.g.*, DE 43-1 (Defendant HARRISON threatened the Court and invited entry of a judgment against him) and DE 53 (Defendant HARRISON failed to respond to any written discovery requests and failed to appear for his duly-noticed deposition).

As a result of the foregoing, Defendant HARRISON should be held liable for the harms set forth in the Amended Complaint.

## V.  CONCLUSION

WHEREFORE, Plaintiffs ANDREW HODGES, VLADIMIR COOD, GAUTAM DESAI, JODY POWELL, SHAMMI NABUKUMAR, and ANTHONY SAJEWICZ, respectfully request:

(a) Summary judgment be entered against Defendant DANIEL HARRISON, an individual, in the principal sum of $1,169,712.95;

(b) the Court award pre-judgment and post-judgment interest on the above-enumerated sum;

(c) the Court award Plaintiffs all costs incurred associated with Plaintiffs' efforts to obtain restitution from Defendants; and

(d) the Court enter such other relief as this Court deems just and proper.

Respectfully submitted,

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:    (954) 516-6000

By: _____
DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail:  JMiller@SilverMillerLaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this    28th    day of December 2018 by using the CM/ECF system and that a true and correct copy will be served <u>via</u> <u>electronic</u> <u>mail</u> to: **DANIEL HARRISON**, *Pro Se Defendant*, The Sloane Club, Lower Sloane Street, Chelsea, London, England, SW1W 8BS, E-mail: dmh1980@protonmail.com.

_____
DAVID C. SILVER