UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-81370-CV-MIDDLEBROOKS

ANDREW HODGES, an individual;
VLADIMIR COOD, an individual;
GAUTAM DESAI, an individual;
JODY POWELL, an individual;
JEFFREY HEBERLING, an individual;
SHAMMI NABUKUMAR, an individual; and
ANTHONY SAJEWICZ, an individual;

    Plaintiffs,

v.

DANIEL HARRISON,

    Defendant.

_____/

## ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court on the Motion for Summary Judgment against Defendant Daniel Harrison filed by Plaintiffs on December 28, 2018. (DE 54). Defendant Harrison is proceeding *pro se* in this matter. On January 4, 2019, I entered an Order with instructions to Defendant Harrison regarding the operation of Fed. R. Civ. P. 56 and advising him of the consequences of his failure to properly respond (DE 57). Thereafter, on January 22, 2019, Harrison filed a Response in Opposition to the Motion for Summary Judgment (DE 59), and a "Motion to Order Immediate and Urgent Subpoena of Potentially Connected Parties" (DE 60). Plaintiffs filed a Reply in support of their Motion for Summary Judgment on January 29, 2019 (DE 62), and Response in Opposition to Harrison's motion for subpoena on February 6, 2019 (DE 63).

## I. OVERVIEW

On March 7, 2018, Plaintiffs filed an Amended Complaint for damages and equitable relief against Defendants Monkey Capital, LLC, Monkey Capital, Inc., and Daniel Harrison. (DE 28 or "Amended Complaint"). At the heart of Plaintiffs' lawsuit are allegations that Plaintiffs contributed cryptocurrency worth millions of dollars in advance of a scheduled Initial Coin Offering (ICO) and supposed launch of a private cryptocurrency exchange and decentralized hedge fund (the "Monkey Capital Market"). Plaintiffs state that the ICO never occurred, the status of the development of the Monkey Capital Market is unknown, and that Defendants unlawfully pocketed investor money. On August 14, 2018, I entered final default judgment against Defendants Monkey Capital LLC and Monkey Capital Inc. (DE 44). On August 27, 2018, after an evidentiary hearing, I awarded damages. (DE 50). Harrison is the only remaining Defendant, and Plaintiffs' now seek summary judgment against him as to all claims.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.* at 1326 (internal citation omitted). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* (internal citation omitted). "Moreover, statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." *Id.* (internal citations omitted).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). When the moving party bears the burden of proof at trial, "the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (internal citation omitted). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (internal quotations and citations omitted).

For purposes of Plaintiffs' Motion for Summary Judgment, I rely on Plaintiffs' statement of undisputed facts for which there is supporting evidence in the record. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Pursuant to the Local Rule, "[a]ll material facts set forth in the movant's statement filed and supported as required . . . will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." L.R. 56.1(b). Harrison's *pro se* Response to Plaintiffs' summary judgment motion fails to comply with applicable Federal Rules,

Local Rules and law, rendering Plaintiffs' Motion effectively unopposed. Therefore all facts set forth in the following analysis of Plaintiffs' claims are deemed undisputed and/or admitted:

### III.   FACTS

On or after January 1, 2016, Defendant Daniel Harrison created Monkey Capital, LLC and Monkey Capital Inc. ("Monkey Capital"). (DE 55, Statement of Undisputed Facts ("SUF") at ¶¶ 1-6). He managed the business affairs of these companies, and controlled their development. (SUF at ¶¶ 1-6). Harrison's efforts were essential to the success of Monkey Capital's enterprise. (SUF at ¶¶ 7-8).

Monkey Capital scheduled an Initial Coin Offering ("ICO") to occur in July of 2017. (SUF ¶11). Harrison solicited people to invest in Monkey Capital at a valuation premium before the Monkey Capital ICO. (SUF ¶ 11). Harrison solicited investors in the Monkey Capital ICO, Coeval, and Monkey Coin. (SUF ¶¶ 12-14). Each of the named Plaintiffs invested in Monkey Capital with an expectation of garnering financial profit, based on Harrison's representations to investors that Monkey Coin would increase in value. (SUF ¶¶ 15, 17-35). The Plaintiffs' investments were pooled with funds of other investors in an effort by Monkey Capital to secure a profit for itself and the investors. (SUF ¶¶ 15, 17-35). Harrison represented to investors that Monkey Coin would increase in value, and Harrison believed that the Plaintiffs expected to profit from their Monkey Capital investments. (SUF ¶ 15, 17-35). The address on the Waves DEX to which Monkey Capital investors sent their investment assets was a wallet owned by Harrison. (SUF ¶ 9). The Monkey Capital ICO did not take place. (SUF ¶ 16).

Monkey Capital issued tokens, Monkey Coin and Coeval and offered these for sale across the United States, using electronic means. (SUF ¶¶ 52-54). Monkey Capital did not register its business -- including the issuance of tokens, Monkey Coin or Coeval -- with the U.S. Securities

and Exchange Commission, nor did it obtain any exemption from registration requirements from the SEC. (SUF ¶¶ 36-51). Monkey Capital also did not register its business – including the issuance of tokens, Monkey Coin or Coeval – with any state securities regulator in the United States, nor did it obtain exemptions from registration requirements from such entities. (SUF ¶¶ 36-51).

## IV. DISCUSSION

I note here, as I did at the final default judgment stage of these proceedings, that the legal conclusions reached in this Order pertain to legal theories that are somewhat novel. Because this Order arises within the context of a motion for summary judgment which is effectively unrebutted by the *pro se* defendant, my conclusions are necessarily based upon Plaintiffs' one-sided submissions to the Court, without the benefit of any meaningful adversarial process.

### A. *Violation of Section 12(a) of the Securities Act of 1933 (Count I)*

Section 12(a)(1) [15 U.S.C. §§77*l*(a)(1)] grants Plaintiffs a private right of action against any person who offers or sells a security in violation of Section 5 [15 U.S.C. § 77e], and states that such person "shall be liable. . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

To prevail on a Section 5 claim, a plaintiff must establish the following elements: "(1) absence of an effective registration statement covering the securities in question; (2) the offer or sale of the securities; and (3) the use of the mails, or any means or instruments of transportation or communication in interstate commerce in connection with the sale or offer." *Scheck Invs., L.P. v. Kensington Mgmt., Inc.*, 2009 WL 10668565, *4 (S.D. Fla. June 17, 2009) (citing *SEC v.*

*Unique Fin. Concepts, Inc.*, 119 F.Supp.2d 1332, 1339 (S.D. Fla. 1998). The definition of a "security" under the Securities Act includes "investment contract(s)." "An offering is an investment contract if there is: (1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits to come solely from the efforts of others." *Tippens v. Round Island Plantation LLC*, 2009 WL 2365347, at *9 (S.D. Fla. July 31, 2009) (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F. 3d 1195, 1199 (11th Cir. 1999). *See also*, *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-301 (1946) ("*Howey*").

By using electronic means to offer cryptocurrencies and/or tokens for sale across the United States, Harrison directly or indirectly made use of means or instruments of transportation or communication in interstate commerce to offer to sell or to actually sell securities, or to carry or cause such securities to be carried through in interstate commerce for the purpose of sale or for delivery after sale. *See, e.g.*, *SEC v. Levin*, 2013 WL 594736, at *12 (S.D. Fla. Feb. 14, 2013) ("[T]he internet, which necessarily includes email, is an 'instrumentality of interstate commerce.'") (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)). Harrison was a "seller" within the meaning of the Securities Act because he solicited Plaintiffs' investments in the aborted Monkey Capital ICO. Moreover, no registration statements for Monkey Capital's offerings were ever filed with the SEC.

**Investment of Money:** The "investment of money" required for an "investment contract" need not be made in cash and refers more generally to "an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses." *SEC v. Friendly*, 49 F. Supp. 2d 1363, 1368-69 (S.D. Fla. 1999). *See also Uselton v. Comm. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991). Plaintiffs' investment

of assets, even if such investments were in the form of cryptocurrencies such as Ether and/or Bitcoin, would satisfy the "investment of money" prong for an investment contract.

**Common Enterprise:** "[A] common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties." *SEC v. Unique*, 196 F.3d at 1199 (citing *Villeneuve v. Advanced Bus. Concepts Corp.*, 698 F. 2d 1121, 1124 (11th Cir. 1990)). "The thrust of the common enterprise element test is that the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return." *Eberhardt v. Waters*, 901 F. 2d 1578, 1580-81 (11th Cir. 1990). The funds paid by Plaintiffs pursuant to the Monkey Capital ICO were pooled by Defendants in an effort by Defendants to secure a profit for themselves and the investors. As a result, the investors, including Plaintiffs, shared in the risks and benefits of the investment.

**Expectation of Profits from the Efforts of Others:** Plaintiffs relied on, and were dependent upon, the expertise and efforts of Defendant for their investment returns. Plaintiffs expected that they would receive profits from their investments in Defendants' efforts. The fortunes of individual investors in the Monkey Capital ICO were directly tied to the failure or success of the products the Defendant purported to develop, and no individual investor could exert control over the success or failure of his or her investment. The third prong of the *Howey* test is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011) (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (11th Cir. 1981)); *see also, SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755 (11th Cir. 2007) ("the focus is on the dependence of the investor on the

entrepreneurial or managerial skills of a promoter or other party") (quoting *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982)).

"Although *Howey* stated that the expectation of profits must come solely from the efforts of others, many courts, including the Eleventh Circuit, have rejected a literal or strict interpretation and have instead interpreted 'solely' to mean substantially or primarily. The Supreme Court has removed the emphasis from the word 'solely' and held that the touchstone of the test is an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Tippens*, 2009 WL 2365347, at *9 n. 9 (quotations and citations omitted). Because the success of Monkey Capital and the Monkey Capital Market that Harrison purported to develop was entirely dependent on Harrison's efforts and actions, the third prong is satisfied.

The transactions at issue here are investment contracts and are therefore subject to federal securities laws, including the registration requirements promulgated thereunder. No registration statements have been filed with the SEC or have been in effect with respect to any of Monkey Capital's offerings. For purposes of summary judgment, the record conclusively establishes that Harrison participated in the offer and sale of unregistered securities in violation of the Securities Act. As a direct and proximate result of Harrison's unregistered sale of securities, Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the Monkey Capital ICO.

**B.** *Violation of Section 15(a) of the Securities Act of 1933 (Count II)*

"Section 15[(a) of the Securities Act] imposes derivative liability on certain 'control persons' for primary violations of the Securities Act." Harrison is subject to liability by virtue of his top-level executive position with Monkey Capital LLC and Monkey Capital Inc., and his

influence over the Monkey Capital enterprise, which provided him the power to control or influence Monkey Capital's actions. As founder and manager of the business activities of Monkey Capital, Harrison was a controlling person. His knowledge of the representations made by Monkey Capital in connection with the ICO may be inferred. By virtue of his position as a top-level executive and participation in and/or awareness of Monkey Capital's operations, Harrison had the power to and did influence and control the decision making relating to Monkey Capital's solicitation of funds from investors, including the decision to engage in the sale of unregistered securities. Moreover, Harrison successfully solicited Plaintiffs' purchases of the securities at issue, motivated by a desire to serve his own financial interest. Accordingly, Harrison is a "controlling person" of Monkey Capital within the meaning of Section 15(a) of the Securities Act, 15 U.S.C. § 77o. Plaintiffs damages were incurred as a result of Harrison's actions as a "controlling person" of the Monkey Capital entities.

### C. *Rescission of Contract (Count III)*

"In order to state a claim for rescission, Plaintiffs must plead facts demonstrating the following: (1) the parties' relationship or character; (2) the making of a contract; (3) fraud, mistake, false representations, impossibility of performance, or other grounds for rescission; (4) that the party seeking rescission actually rescinded the contract and notified the other party accordingly; (5) if the moving party received benefits from the contract, Plaintiffs must allege that they attempted to restore those benefits to the party furnishing them; and (6) there is no adequate remedy at law for the moving party." *Beaver v. Inkmart LLC*, 2012 WL 3822264, *5 (S.D. Fla. Sept. 4, 2012).

For reasons previously explained, I have found that an investment contract existed between Plaintiffs and Defendants, as sellers of securities. However Plaintiffs have not satisfied

their burden of identifying evidence in the record to support specific acts of fraud, mistake or false representations on the part of Defendant Harrison. Instead, Plaintiffs' cite to the facts set forth in this Court's order entering final default judgment against the Monkey Capital entities, but at the default judgment stage, I was evaluating the sufficiency of the Plaintiffs' allegations only. Thus the record does not support judgment in favor of Plaintiffs on the claim of Rescission of Contract, and Plaintiffs' motion is denied as to Count III.

### D. *Alter Ego Liability (Count IV)*

The undisputed facts sufficiently establish that Harrison founded, controlled and acted through Monkey Capital LLC and Monkey Capital Inc. such that he and the defaulted companies should not be considered separate and distinct entities. Moreover, evidence in the record supports a finding that the Defendants comingled assets such that adhering to the fiction of separate entities would not promote justice for the victims of Defendants' conduct.

### E. *Unregistered Offer and Sale of Securities in violation of Fla. Stat. §§ 517.011, et seq. (Count V)*

"Section 517.07 of the [Florida Securities and Investor Protection Act] provides that '[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security . . . is registered pursuant to this chapter.' Fla. Stat. § 517.07(1). Accordingly, in order for Plaintiffs to prevail . . . they must establish that: (1) [the] contracts sold by [Defendants] were securities; (2) these securities were not registered with the State of Florida; and (3) Defendants sold such unregistered securities." *Scheck Invs., L.P.*, 2009 WL 10668565, *2. The scheduled Monkey Capital ICO called for an investment of money or assets by Plaintiffs. The undisputed facts demonstrate that the funds paid by Plaintiffs were pooled by Defendants in the project in an effort by Defendants to secure a profit for themselves and Plaintiffs. As a result, the facts support a finding that Plaintiffs -- as the investors -- shared in the

risks and benefits of the investment scheme.  Plaintiffs relied upon, and were dependent upon, the expertise and efforts of Harrison for their investment returns.  Plaintiffs expected that they would receive profits from their investments in Harrison's efforts.

The transactions at issue constituted investment contracts and are therefore subject to the Florida Blue Sky Laws, including the registration requirements of Fla. Stat. § 517.07.  No registration statements were filed with the Florida Office of Financial Regulation or were in effect with respect to any of the Monkey Capital offerings.  Similarly, no exemption from registration exists with respect to the Monkey Capital ICO.  Despite neither registering the offerings nor obtaining an exemption from registration, Harrison sold Plaintiffs Coeval and Monkey Coins in connection with the Monkey Capital ICO.  These effectively undisputed facts are sufficient to establish Harrison's violation of Fla. Stat. §§ 517.07, *et seq.*.  And as a result of Harrison's sale of securities, Plaintiffs have suffered damages in connection with their respective purchases of Coeval and Monkey Coin securities in the Monkey Capital ICO.

### F. *Violation of Florida's Deceptive and Unfair Trade Practices Act Chapter 501, § 211(1) Fla. Stat. ("FDUTPA") (Count VI)*

A cause of action arising under FDUPTA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Beaver*, 2012 WL 3822264, at *4.  *See also Tippens*, 2009 WL 2365347, at *11 (same).  Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

Plaintiffs' motion for summary judgment lists numerous specific acts and omissions which Plaintiffs claim were deceptive and/or unfair.  Plaintiffs state that Harrison falsely represented, among other things, that: "(a) Monkey Capital was developing a news, information,

and trading network -- along with a decentralized hedge fund -- in which investors could place their funds for profit; (b) Plaintiffs' cryptocurrency was being used to build out the Monkey Capital Network; (c) The Monkey Capital Network would be fully functional shortly after the ICO; and (d) Monkey Capital would timely issue to investors their proportional Monkey Coin holdings shortly after the ICO." (DE 54 at 13-14). Plaintiffs argue that these acts "constitute both deceptive and unfair trade practices because the false representations and omissions made by Defendant Harrison ha[d] a tendency or capacity to deceive consumers, such as Plaintiffs, into investing in Monkey Capital's falsely-touted business and [were] immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* I previously held in the context of default judgment that these well-pleaded facts, taken as true, were sufficient to impose liability for a violation of FDUPTA. However in their summary judgment motion, Plaintiffs cite to no evidence in the record to support these allegations of specific deceptive acts or unfair practices. Accordingly, the motion is denied as to Count VI.

### G. *Fraudulent Inducement (Count VII)*

Under Florida law, the elements of fraudulent inducement are: (1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation. *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1290 (S.D. Fla. 2007). Again, with respect to this count, Plaintiffs do not cite record evidence to support the specific misrepresentations which they assert induced them to invest. Summary judgment is therefore denied as to Count VII.

### H. *Conversion (Count VIII)*

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (internal quotations and citations omitted). Under Florida law, the claimant must further "establish possession or an immediate right to possession of the converted property at the time of the conversion." *United States v. Bailey*, 419 F. 3d 1208, 1212 (11th Cir. 2005). "The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made." *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1308 (M.D. Fla. 2013) (internal quotations and citation omitted). "But while a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown." *Id.* Plaintiffs transferred cryptocurrency to Harrison and/or the Monkey Capital entities for investment and Harrison did not return their money when the IPO failed to launch. Harrison thereby interfered with or deprived Plaintiffs of their property. I will therefore grant summary judgment in favor of Plaintiffs as to Count VIII.

### V. CONCLUSION

For the above-stated reasons, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Summary Judgment (DE 54) is **GRANTED IN PART AND DENIED IN PART**. Summary Judgment will be entered in favor of Plaintiffs as to Counts I, II, IV, V, and VIII of the Amended Complaint (DE 28). The Motion is denied as to Counts III, VI and VII. Plaintiffs shall file a notice with the Court **on or before February 12, 2019,** advising how they intend to proceed in this matter with respect to Counts III, VI and VII. Trial is scheduled for February 19, 2019.

2. Defendant Daniel Harrison's "Motion to Order Immediate and Urgent Subpoena of Potentially Connected Parties" (DE 60) is **DENIED**.

3. **Damages:** I previously considered the issue of appropriate damages within the context of the default judgment proceedings against the Monkey Capital entities. I held an evidentiary hearing to determine the appropriate manner of calculating the value of Plaintiffs' investments, and subsequently ordered that Monkey Capital LLC and Monkey Capital Inc. were jointly and severally indebted to Plaintiffs in the following principal sums as of July 13, 2017:

| Name of Plaintiff | Cryptocurrency Wrongfully Taken by Defendants | Value of Cryptocurrency Wrongfully Taken by Defendants ($USD)[1] |
|---|---|---|
| Andrew Hodges | 50.003 bitcoin | $313,613.00 |
| Vladimir Cood | 30 bitcoin | $188,157.00 |
| Gautam Desai | 9.64 bitcoin<br>109,101.99 Waves coins<br>5,105.67 MobileGo coins | $60,461.02<br>$289,241.00<br>$933.78<br>Total: $350,635.80 |
| Jody Powell | 8.2 bitcoin | $52,429.50 |
| Shammi Nabukumar | 10 bitcoin | $62,718.90 |
| Anthony Sajewicz | 27.6 bitcoin<br>48 Ether<br>3,000 Waves coins | $173,104.00<br>$21,101.42<br>$7,953.33<br>Total: $202,158.75 |
| **TOTAL PRINCIPAL SUM** | | **$1,169,712.95** |

I awarded the above sum plus pre-judgment interest at the interest rate set forth in Fla. Stat. § 5.03 from July 13, 2017. Before entering final judgment and awarding damages against Defendant Harrison, I will provide him an opportunity to present to the Court any evidence or argument on this issue. **Defendant Harrison may file a statement with the Court regarding**

---

[1] Valuations were taken on July 13, 2017 from www.CoinMarketCap.com, which takes the volume weighted average of all prices reported at several dozen cryptocurrency markets serving investors in the United States and abroad.

**his position on damages on or before February 18, 2019.** Plaintiffs' may file any response to Defendant Harrison's submission three (3 days) thereafter. If Defendant Harrison is advised that failure to respond to this Order before the deadline will result in entry of judgment awarding damages against him in the sums set forth above.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 8 day of February, 2018.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of record
             Daniel Harrison, *pro se*